# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **STATE OF OHIO ex rel DANA, SKAGGS, et al.,** | : | |
| | : | |
| **Relators-Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | |
| **JENNIFER BRUNNER, in her official** | : | **Case No. C2: 08-CV-1077** |
| **capacity as Secretary of State of Ohio,** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | **Magistrate Judge King** |
| **and** | : | |
| | : | |
| **Franklin County Board of Elections,** | : | |
| | : | |
| **Respondent-Defendants.** | : | |

## ORDER

## I. INTRODUCTION

Defendant Ohio Secretary of State Jennifer L. Brunner ("the Secretary") has petitioned to have this case removed from state court to federal court under 28 U.S.C. §§1441(a) and 1441(b). Relator-Plaintiffs Dana Skaggs and Kyle Fannin ("Plaintiffs") and Respondent-Defendant Franklin County Board of Elections ("FBOE") oppose the Secretary's petition for removal and have moved to remand this case to the Ohio Supreme Court under 28 U.S.C. § 1447. (Dkt. nos. 11 & 12). The Secretary opposes remand. For the following reasons, the Court finds that removal is proper and **DENIES** the Parties' motions for remand.

## II. BACKGROUND

### A. The Consolidated Election Cases Pending Before this Court

The issues raised in the Parties' motions can only be understood in context of two consolidated provisional ballot election cases currently pending before this Court: *Ohio Republican Party v. Brunner* (*ORP* Case), No. 2:08-cv-913, and *The Northeast Ohio Coalition*

*for the Homeless v. Brunner* (*NEOCH* Case), No. 2:06-cv-896.  The *NEOCH* Case, which

involves constitutional challenges to Ohio's Voter Identification Laws ("Voter ID Laws") and

Provisional Ballot Laws, was filed before this Court during the 2006 election season.  During the

2008 election season, the *NEOCH* plaintiffs moved for a preliminary injunction to address their

concerns regarding the uniformity of procedures for counting provisional ballots during this

election.

Settlement negotiations ensued.  During those negotiations, and in a response to the

*NEOCH* Plaintiffs concerns, the Secretary issued Directive 2008-101, which lays out provisional

ballot counting procedures to be followed by Ohio Boards of Elections.  On October 24, 2008

this Court issued an Order in the *NEOCH* Case incorporating Directive 2008-101 and making it

a federal court order.

The Court issued an order on October 27, 2008 ("October 27 Order") relating to the

effect of poll worker error on provisional ballot counting.  The October 27 Order was promptly

incorporated into Directive 2008-103, which provides that a provisional ballot cannot be rejected

because of poll worker error.  Thus, even before election day, this Court had issued two separate

orders regarding how provisional ballots were to be counted in the 2008 election.

The *ORP* Case also involves constitutional challenges to Ohio's Voter ID and Provisional

Ballot Laws as enforced through directives issued by the Secretary ("Directives").  It was filed

on September 26, 2008 before Hon. George C. Smith.  On November 4, 2008, Plaintiffs in the

*ORP* Case filed an Amended Complaint.  Based on the Amended Complaint, the Secretary

moved to consolidate the *ORP* Case with the *NEOCH* Case.  The Amended Complaint contained

prayers for relief relating to four Directives issued by the Secretary.  Two of those prayers were

mooted by decisions of the Ohio Supreme Court.

Of the surviving claims, the *ORP* Amended Complaint first sought to enjoin Directive 2008-101 and to require the Secretary to "promulgate uniform standards for the determination of the eligibility of provisional ballots to be counted." Directive 2008-101, however, related to the provisional ballot issue that is central to the October 2008 preliminary injunction proceedings in the *NEOCH* Case. Therefore, the *ORP* Case Plaintiffs' challenges to Directive 2008-101 are inextricably related to the *NEOCH* Case.

The *ORP* Amended Complaint also sought to enjoin Directive 2008-105, which relates to the election night "Unofficial Canvass" of ballots. Directive 2008-105 discusses vote counting procedures in the context of the "Unofficial Canvass," which occurs on election night and excludes provisional ballots, which are counted beginning the day after the election. Nevertheless, the ballot counting procedures in 2008-105 are applied to the counting of provisional ballots. (*See* Nov. 6, 2008 Order on Mot. to Consol., *NEOCH* Case Dkt. no. 154, 4 n.4). Because Directive 2008-105 also dealt with the manner in which provisional ballots are counted, the Court found that challenges to Directive 2008-105 were related to the issues in the *NEOCH* Case.

Because both of these cases involved disputes over the proper procedures for counting provisional ballots, this Court granted the Secretary's Motion to Consolidate them. (*See* Nov. 6, 2008 Order on Mot. to Consol., *NEOCH* Case dkt. no. 154). Similarly, both suits alleged Equal Protection Clause issues relating to counting provisional ballots—specifically, that non-uniform counting procedures would deny voters equal protection and dilute those plaintiffs' right to vote. Given the overlap between the *NEOCH* Case and the *ORP* Case, the Court concluded that the cases were inextricably linked and found that consolidation was necessary to avoid the risk of

inconsistent rulings on the constitutional validity of the procedures to be used to count

provisional ballots under the Ohio Election Laws and the Directives issued by the Secretary.

*B. Skagg's Plaintiffs' Provisional Ballot Counting Suit Before the Ohio Supreme Court*

On November 13, 2008, Plaintiffs filed a complaint in the Ohio Supreme Court seeking

a writ of mandamus to compel the Secretary and the FBOE to refuse to count provisional ballots

in the November 4, 2008 election that do not have both the voter's name and signature on the

provisional ballot affirmation. Plaintiffs contend that the Secretary and the FBOE reversed their

interpretation of the Ohio Election Law, specifically Ohio Rev. Code Ann. §§ 3505.181,

3505.183, and Directive 2008-101 after the November 4, 2008 election, to allow ballots without

voters' names and signatures to be counted. Plaintiffs assert that this is an incorrect

interpretation of the law.

The Secretary timely filed a notice of removal to the Southern District of Ohio on

November 14, 2008. The case was initially assigned to Hon. Gregory L. Frost, but was

transferred to this Court pursuant to Local Rule 3.1(b) because Judge Frost and this Court agreed

that the instant case is related to the *NEOCH* Case. Plaintiffs and the FBOE oppose removal and

have both moved to remand the case to the Ohio Supreme Court. The Court held an emergency

hearing on the Parties' motions for remand on November 15, 2008.

### III. LAW & ANALYSIS:

Removal of state court actions to federal court is only proper if the action could

originally have been filed in federal court. *Catepillar Inc. v. Williams*, 482 U.S. 386, 391 (1987).

28 U.S.C. §1441(b) states in pertinent part:

> Any civil action of which the district courts have original jurisdiction founded on
> a claim or right arising under the Constitution, treaties or laws of the United
> States shall be removable without regard to the citizenship or residence of the
> parties. Any other such action shall be removable only if none of the parties in

> interest properly joined and served as defendants is a citizen of the State in which
> such action is brought.

28 U.S.C. § 1331 creates federal jurisdiction for actions "arising under the Constitution, laws, or treaties of the United States." Under 28 U.S.C. § 1441(b), a civil action may be removed to federal court if there is federal question jurisdiction as defined in §1331.[1] The party seeking removal bears the burden of proving that the federal courts have original jurisdiction. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006). Any questions regarding whether removal is proper must be decided in favor of remand. *Eastman*, 438 F.3d at 549-50.

### A. Removal Based on Federal Question Jurisdiction

A case is within a court's original jurisdiction under 28 U.S.C. § 1331 "only [in] those cases in which a well-pleaded Complaint establishes either that federal law creates the cause of action or that the plaintiff[']s right to relief necessarily depends on resolution of a substantial question of federal law." *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990) (internal quotation marks omitted). The "well-pleaded complaint rule" requires that the federal question be apparent on the face of the plaintiff's properly pleaded complaint. *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003). As an "independent corollary of the well-pleaded complaint rule . . . a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22 (1983); *City of Warren v. City of Detroit*, 495 F.3d 282, 287 (6th Cir. 2007). Thus, "if a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." *City of Warren,* 495 F.3d at 287; *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998).

---

[1] In non-diversity cases, the scope of removal jurisdiction under §1441(b) is considered identical to the scope of federal question jurisdiction under §1331. *Long v. Bando Mfg. of Am., Inc.,* 201 F.3d 754, 757-58 (6th Cir. 2000).

A case arises under federal law in three situations: (1) where the plaintiff's cause of action is created by federal law; (2) where a substantial disputed question of federal law is a necessary element of the state-law claims; or (3) where the state claim is actually a federal claim due to federal preemption. *City of Warren* , 495 F.3d at 286-87.

The Secretary argues that removal is proper under 28 U.S.C. §§1441(a)[2] and 1441(b) because Plaintiffs' claims for relief turn on the interpretation of the Secretary's Directive 2008-101, governing how provisional ballots are to be counted, which was adopted as an order of this Court in the *NEOCH* Case on October 24, 2008. Also, this Court issued the October 27 Order dealing with the matter of how poll worker error should effect the counting of provisional ballots. That Order was subsequently incorporated into Directive 2008-103, which provides that poll worker error cannot form the basis for rejection of a provisional ballot. Therefore, the Secretary claims, the Complaint implicates federal questions because it is "based entirely upon an apparent dispute of interpretations of specific language in Directives 2008-101 and 2008-103," which are Orders of this Court. (Secretary Removal Mem. 2). The Secretary further contends that Plaintiffs are trying to engage in forum-shopping and are ignoring this Court's jurisdiction over pending issues in the *NEOC*H Case that relate directly to the counting of provisional ballots issues in Plaintiffs' Complaint.

Plaintiffs claim that removal is improper because they are the "master of [their] complaint," *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir. 1994), and the

---

[2]

  28 U.S.C. § 1441(a) states in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Complaint specifically states that "[n]o federal claims are asserted." The FBOE also asserts that removal is improper because it does not consent to removal. This Court finds that removal is proper because: (1) Plaintiffs allege that the Secretary has violated a federal court order, *EBI-Detroit, Inc., v. City of Detroit*, 279 F.App'x 340, 345 (6th Cir. 2008); and (2) Plaintiffs' Complaint alleges a violation under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, *Bush v. Gore*, 531 U.S. 98, 105 (2000).

### 1. Plaintiffs' Complaint States a Violation of a Federal Court Order

The Sixth Circuit recently dealt with a similar situation in *EBI-Detroit, Inc.*, 279 F.App'x at 345. In *EBI-Detroit*, a contractor-plaintiff sued, *inter alia*, the Detroit Water and Sewer Department (DWS) and the mayor of Detroit in state court. *Id*. at 342. The suit arose from the DWS' rejection of the plaintiff's bid on a contract. *Id*. at 343. The defendant-mayor had been appointed as a "Special Administrator" of the DWS as a result of a consent decree between the DWS and the Environmental Protection Agency in a prior federal litigation. In that role, the mayor had the power to approve contracts with the DWS and to suspend competitive bidding on DWS contracts in certain circumstances.

When the plaintiff's bid was rejected, plaintiff filed suit in state court "asserting claims for breach of contract, defamation, tortious interference, and 'abuse of power by the Special Administrator.'" *Id*. at 344. The case was removed to federal court and transferred to the Judge in charge of overseeing the consent decree. *Id*. The Sixth Circuit affirmed the removal on appeal.

On appeal, the plaintiffs in *EBI-Detroit* claimed there was no federal question jurisdiction to support removal because their complaint relied solely on state law. *Id*. at 345. The court found that the plaintiffs' complaint did contain a federal question because the complaint alleged

that the mayor had violated the federal court order appointing him as Special Administrator.  *Id.* at 345-46.  The court explained that the "'laws' of the United States include the orders issued by the federal courts."  *Id.*  Therefore, where a complaint alleges that the defendant violated a federal court order, removal under §1441(b) is proper.  *Id*. at 446.

The court noted that the plaintiff asked the court to "look at the 'substance' of EBI's complaint and find no federal jurisdiction."  *Id*. at 346.  But the court explained:

> [i]f EBI means that we should look at the words of EBI's complaint and see what legal violations are alleged, that is what we are doing.  EBI alleged in count 14 that [the mayor] broke federal law by exceeding his powers as Special Administrator, and it is this substantive legal allegation that creates jurisdiction.

*Id*.  The court concluded that the plaintiff's allegation "required to the court to interpret a federal court order and thus presents a federal question."  *Id*. at 342.

As in *EBI-Detroit,* where, as here, the plaintiffs' complaint alleged that the defendant had violated a federal court order, removal is proper.  Plaintiffs' Complaint alleges on its face that the Secretary has violated not only the Ohio Election Laws, but also Directive 2008-101—an Order of this Court.  Moreover, like the complaint at issue in *EBI-Detroit*, resolution of the plaintiffs' allegations regarding improper provisional ballot counting will require the deciding court to interpret this Court's Order in Directive 2008-101 as well as the Court's October 27 Order, which prompted the issuance of Directive 2008-103 regarding poll worker error.

In Directive 2008-101, the Court approved and ordered compliance with a number of provisional ballot counting procedures.  That Directive included the following provision: "[I]f **ANY** of the following apply . . .  board of elections shall neither open nor count the provisional ballot . . . [t]he individual did not provide the following: (1) His or her name and signature as the person who cast the provisional ballot."  (Directive 2008-101, Section VI.D.2).  As Directive 2008-101 was made an Order of the Court in the *NEOCH* Case, and Plaintiffs' claims

necessarily require an interpretation of that Directive—Plaintiffs' claims inevitably arise under the laws of the United States.

Like the *EBI-Detroit* plaintiff, Plaintiffs in this case asked the Court at oral argument to look at the 'substance' of their Complaint and find no federal jurisdiction. The Court has indeed looked to the substance of the Complaint and finds a federal question on its face. Paragraph 18 of the Complaint specifically invokes and relies on the Secretary's duty to follow and failure to comply with Directive 2008-101, which is a federal court order. Thus, removal is proper.

The Court finds that this case is distinguishable from the Sixth Circuit's ruling in *City of Warren*, 495 F.3d at 282. In *City of Warren,* the Sixth Circuit found that removal was improper because "[a] substantial, disputed question of federal law [was] not a necessary element of [the plaintiffs'] state law claims." *Id.* at 287. The district court in that case had found that removal was proper, even though plaintiff's complaint alleged only breach of contract and state law statutory interpretation questions, because the relief sought in the complaint might have had an adverse effect upon a consent judgment in an earlier federal suit. *Id.* at 285.

Conversely, the case before this Court raises a substantial disputed question of federal law on the face of Plaintiffs' Complaint. Undoubtedly, the resolution of the allegations in the Complaint necessarily require the deciding court to interpret this Court's federal orders in the *NEOCH* Case. Therefore, the Court finds *City of Warren* inapposite. Instead, the Court believes *EBI-Detroit* controls because plaintiffs' complaint alleges that the Secretary is violating a federal court order.

Plaintiffs also assert that under the well-pleaded complaint rule there is no federal question jurisdiction because their complaint specifically states that "[n]o federal claims are asserted." The Court has reviewed the Complaint and finds federal claims on the face of the

Complaint including allegations that the Secretary has violated a federal court order, ¶ 18; and allegations that amount to Equal Protection violations, ¶¶ 4-5. Specifically, paragraph 18 alleges that this Court's order in Directive 2008-101 prohibits the Secretary's modified interpretation of whether provisional ballot applications without the voters' name and signature may be counted, see *supra* Section III.A.1. Moreover, paragraphs 4-5 allege that Plaintiffs seek relief to prevent dilution of their right to vote in a federal election, which alleges the sum and substance of an Equal Protection Clause violation as described *infra* Section III.A.2. *Bush v. Gore*, 531 U.S. at 105. Under the artful pleading doctrine, removal is not defeated by the plaintiffs' omission to plead necessary federal questions. *Rivet*, 522 U.S. at 475.

Finally, the Court is highly suspicious of Plaintiffs' decision to file their suit in the state court. Plaintiffs' Complaint named the same Directive that was an order of this Court, in the same election, implicating the counting of the same provisional ballots that were the subject matter of the substantial provisional ballot litigation that has proceeded before this Court. In the Court's view, plaintiff is likely engaging in impermissible forum-shopping.

### 2. Plaintiffs' Complaint States Violations of the Equal Protection Clause

Moreover, the Court finds that Plaintiffs' Complaint contains Equal Protection Clause questions under the Fourteenth Amendment of the Constitution. Paragraphs four and five of the Complaint state that the Plaintiffs "bring[] this action to assure that his vote is not diluted as a result of the misdirected instructions of the Secretary of State to count provisional ballots." On their face, Plaintiffs' averments state an Equal Protection Clause claim. *Bush v. Gore*, 531 U.S. at 105 (voter dilution claims fall under the Equal Protection Clause); *cf., United States v. Classic,* 313 U.S. 299 (1941); *accord United States v. Wadena*, 152 F.3d 831, 845 (8th Cir. 1998) ("The right of suffrage, whether in an election for state or federal office, is one that qualifies under the

Equal Protection Clause of the Fourteenth Amendment for protection from impairment, when such impairment resulted from dilution by a false tally" (internal quotation marks omitted)).

The Court is aware that one of the races at issue in this case is the election for the 15th Congressional District Seat. There is currently only a 400 vote difference between the winner and loser in that race. That seat covers Franklin, Madison, and Union Counties.

At oral argument, the Court learned that the Boards of Elections of these three counties are using different provisional ballot applications. For example, in the 15th Congressional District race, Franklin County uses a provisional ballot application of its own design and requires voters to write *their own* names on the provisional ballot envelopes. Union and Madison Counties follow the Secretary's form 12B ballot application, which requires the *poll worker* to write in the name of the voter casting the provisional ballot. Under Directive 2008-103 and this Court's October 27 Order, provisional ballots may not be rejected for reasons that are attributable to poll worker error. This means that if a provisional ballot voter in Franklin County neglects to write down his or her name and signature, the ballot might not be counted because this could be construed as the voter's error. But, if a provisional ballot in Union or Madison Counties does not include the voters' name and signature this could be attributable to poll worker error and not invalidate the vote under this Court's Order. Thus, the record already before the Court in this case demonstrates that provisional ballots are not being counted uniformly, the same Equal Protection Clause violation at issue in the *NEOCH* Case and the *ORP* Case. Therefore, the Court concludes that resolution of the claims in Plaintiffs' Complaint will necessarily involve substantial questions of federal Fourteenth Amendment Equal Protection law.

For the reasons detailed above, the Court finds that removal is proper because Plaintiffs' Complaint before the Ohio Supreme Court necessarily implicates a substantial disputed question of federal law, namely the interpretation of the Court's Order in the *NEOCH* Case incorporating Directive 2008-101 and the Equal Protection Clause.

## B. Rule of Unanimity

Finally, the Court finds that the FBOE's lack of consent to removal does not make removal improper in this case. Generally, the "rule of unanimity" requires that all defendants join in the removal petition. *Loftis v. UPS, Inc.*, 342 F.3d 509, 516 (6th Cir. 2003) (noting that the rule is derived from 28 U.S.C. § 1446). As a threshold matter, the Court determined at the November 17, 2008 hearing in this matter, that Defendant FBOE's interests were aligned with the Plaintiffs' interests and, therefore, **GRANTED** the Secretary's Motion to Realign Parties. (*See* Nov. 17, 2008 Hr'g Tr.). That ruling made the FBOE a plaintiff in this case. In light of the Court's ruling on the Motion to Realign, the FBOE's lack of consent to removal is no longer an issue as the FBOE is now aligned with the plaintiffs in this case.

Notwithstanding that, there are several exceptions to the rule of unanimity. Unanimity is not required if: (1) the non-joining defendant has not been served with process at the time the removal petition is filed; or (2) the non-joining defendant is merely a nominal or formal party. *Klein v. Manor Healthcare Corp.*, Nos. 92-4328, 92-4347, 1994 WL 91786, at *3 n.8 (6th Cir. Mar. 22, 1994) (recognizing several exceptions to the rule of unanimity); *First Independence Bank v. Trendventures, LLC,* No 07-CV-14462, 2008 WL 253045, at *5 (E.D. Mich. Jan. 30, 2008) (same). The Court finds both of these exceptions apply in this case.

First, the FBOE admits that it was not served before notice of removal was filed, thus its consent is not required to perfect removal.[3]  Second, the Court finds that, due to factual developments in the case, the FBOE is now a nominal party and may be disregarded for removal purposes.  A party who has no legal interest in or "control over the subject matter of the litigation" is a nominal party.  *Rose v. Giamatti*, 721 F.Supp. 906, 914 (S.D. Ohio 1989); *Local Union No. 172 Int'l Ass'n of Bridge, Structural Ornamental & Reinforcing Ironworkers v. P.J. Dick, Inc*., 253 F.Supp.2d 1022, 1027 (S.D. Ohio Mar. 4, 2003) (noting that a Court should consider the "principal purpose of the suit" to determine whether a party is a nominal party).

The Court recognizes that the FBOE must determine the eligibility or ineligibility of all provisional ballots and may not delegate this task.  (Directive 2008-101).  However, at oral argument, the FBOE admitted that they have already voted on their interpretation of the manner in which provisional ballots will be counted—resulting in a deadlock within the FBOE regarding whether provisional ballots that do not have both the voter's name and signature on the envelope may be counted.   The FBOE is deadlocked 2-2.  Under the Ohio Election Law, the Secretary has the duty to break the deadlock, and the issues are now before her.  The FBOE must automatically apply whatever interpretation the Secretary reaches once she breaks the deadlock, and the FBOE no longer controls the determination of how provisional ballots will be counted where the voter did not provide both name and signature, which is the subject matter of this litigation. Consequently, even if the FBOE were still a defendant in this case, the FBOE is a nominal party and its lack of consent to removal does not make removal improper.

---

[3] FBOE contends that the non-service exception does not apply because counsel for the FBOE filed an appearance in the case before the Supreme Court of Ohio.  Plaintiffs cite *First Independence Bank v. Trendventures, LLC,* in support of their position.  2008 WL 253045.  However in *Trendventures* the defendant had not only filed an appearance but also had been served with the original complaint in that matter and filed an answer to that complaint.  *Id*. at *6.  Thus, the cited caselaw is distinguishable because the FBOE was never served or summoned by the Ohio Supreme Court and the non-service exception applies to this case.

### IV.  CONCLUSION

For the foregoing reasons the Court finds removal is proper.  Therefore, the Court finds that: (1) Plaintiffs' Motion for Remand (Dkt. no. 12) is **DENIED** and (2) Defendant FBOE's Motion for Remand (Dkt. no. 11) is **DENIED**.

   **IT IS SO ORDERED.**


   <u>   s/Algenon L. Marbley         </u>
   **ALGENON L. MARBLEY**
   **United States District Court Judge**

**DATE: November 17, 2008**