IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STATE EX REL. SKAGGS, et al. : | |
| : | |
| Plaintiffs, : | Case No. 2:08-cv-1077 |
| : | |
| v. : | JUDGE ALGENON L. MARBLEY |
| : | |
| JENNIFER BRUNNER, : | Magistrate Judge Norah McCann King |
| Secretary of State of Ohio, : | |
| : | |
| Defendant. : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Plaintiffs' and Defendant's Cross-Motions for Summary Judgment. Plaintiffs Dana Skaggs and Kyle Fannin ("Plaintiffs") filed suit on November 14, 2008 against Defendant Jennifer Brunner, in her official capacity as the Secretary of State of Ohio ("the Secretary") and Defendant the Franklin County Board of Elections ("FCBE"). On November 17, 2008, this Court granted the Secretary's Motion to Realign the Parties, making the FCBE a plaintiff in this action. The FCBE also submitted a Motion for Summary Judgment. For the reasons set forth below, the Court **GRANTS** the Secretary's Motion for Summary Judgment and **DENIES** Plaintiffs' and the FCBE's Motions for Summary Judgment.

### II. BACKGROUND

#### A. Factual Background

At issue in this case is whether the votes of approximately 1,000 registered and eligible Ohio voters who voted by provisional ballot in the November 4, 2008 election will be counted. Also at issue are the results of three extremely close congressional races in the 15th Congressional District, the 20th House District, and the 19th House District, which may be determined by those 1,000

provisional ballots.[1] On election day, more than 27,000 Franklin County voters cast provisional ballots.[2] Approximately 1,000 of those ballots are in question (the "disputed ballots"). Plaintiffs do not allege that any of the disputed ballots were fraudulent, cast by ineligible voters, or cast in the wrong precinct. Nonetheless they now seek to prevent the ballots from being counted claiming what they perceive to be deficiencies in the ballot application forms.

*1.How provisional ballots are cast*

Under Ohio law, a voter may cast a provisional ballot by executing a written affirmation in the presence of an election official. Ohio Rev. Code Ann. § 3505.181(B)(2) (2008). The written affirmation is part of the Provisional Ballot Application ("PBA") that is printed on an envelope into which a voter inserts the provisional ballot. That voter then submits the sealed PBA containing his ballot to the election official. On receipt of the sealed PBA, a county board of elections must determine the voter's eligibility to cast a provisional ballot by reviewing the voter-provided information on the PBA. If, after completing its eligibility review, a county board of elections determines a provisional ballot voter to be eligible to vote, the envelope is opened and the ballot is removed. To preserve the anonymity of the vote, the ballot is then commingled with all of the other provisional ballots cast in the election. However, the eligibility of *all* PBAs must be determined before a single provisional ballot may be unsealed, separated from its PBA envelope, and counted. See Ohio Rev. Code § 3503.183(D) ("No provisional ballots shall be counted in a particular county until the board determines the eligibility to be counted of all provisional ballots cast in that county

---

[1] Based on the Parties' representations the Court understands that the leaders in those races are ahead by, respectively, 400 votes, 783 votes, and 40 votes.

[2] The FCBE has already properly rejected provisional ballots cast by unregistered or unqualified voters.

. . . .") Moreover, all provisional ballots must be processed and all counting completed by November 25, 2008, adding extraordinary time pressure to the need to resolve these claims. (Directive 2008-101, Section II.)

*2.The disputed ballots*

The disputed ballots fall into four separate categories: (1) ballots where a voter has signed the affirmation but failed to print her name; (2) ballots where the voter provided a printed name on the affirmation but failed to include a signature; (3) ballots that include both a voter signature and the voter's printed name, where the signature, the printed name, or both were written on the wrong portion of the Application; and (4) ballots where the affirmation form contained no proof that the voter presented valid identification.

All of the disputed ballots include a name, either in print or signature form, and other information (*i.e.* the voter's date of birth and address) that have allowed the voters who cast these ballots to be identified. In fact, the Secretary has represented and the Plaintiffs have not denied, that a determination has already been made that all of the disputed ballots were cast by voters who were properly registered and eligible to vote in that precinct. Moreover, the Court understands that where a ballot contains a signature, that signature has been matched to a voter's digitized signature in the voter registration database.

Plaintiffs assert that the first three categories of disputed ballots are defective and should not be counted. The Secretary counters that any possible "defects" in the disputed ballots were caused by poll worker error and urges this Court to uphold its instruction to count those ballots. For the fourth category, however, because a poll worker has an express duty to record a voter's identification information under Section 3505.181(B)(6) of the Ohio Revised Code, the Parties agree that the poll

worker bears the duty of completing the missing information. Thus, Plaintiffs do not challenge the validity of the Secretary's directive to the FCBE to count those provisional ballots that do not include the necessary identification information.

*3.This Court's Orders regarding counting provisional ballots*

As a result of two consolidated provisional ballot election cases currently pending before this Court—*Ohio Republican Party v. Brunner*, No. 2:08-cv-913, and *The Northeast Ohio Coalition for the Homeless v. Brunner*, No. 2:06-cv-896—this Court has previously issued two Orders directing the proper method for counting ballots in the 2008 election. Directive 2008-101, which was incorporated as a Court order on October 24, 2008, establishes the processes and procedures the Ohio boards of elections should follow when counting provisional ballots. This Court also issued an order on October 27 ("October 27 Order"), which expressly stated that provisional ballots cast by an otherwise eligible voter could not be rejected for reasons attributable to poll worker error.[3] The background of these orders is explained in detail in this Court's November 17, 2008 Order upholding removal and denying remand. (Doc. No. 20).

*4.The Secretary's instructions to the FCBE regarding counting provisional ballots*

Pursuant to her statutory mandate, the Secretary promulgated a PBA containing a voter affirmation form, the PBA (also known as Form 12-B), for voters to use to cast provisional ballots in the November 4, 2008 Election. Ohio Rev. Code § 3505.04. Rather than use the Secretary's prescribed affirmation form, however, the FCBE crafted its own version of the form, which was critically different from that of the Secretary. Where the Secretary's form contemplated that a poll

---

[3] The October 27 Order was promptly incorporated into Directive 2008-103, which mirrors the language of the October 27 Order.

worker must print the voter's name and sign the form, the FCBE's form placed the requirement of completing the PBA solely on the voter, requiring the voter both to print his name and to sign the form. Furthermore, though the FCBE form requires that each voter provide both a printed name and signature, the Secretary's form includes no such mandate.

Also in her role as "Chief election official," Ohio Rev. Code § 3501.04, the Secretary issued Directive 2008-27, which requires Ohio county boards of elections to train poll workers using the Poll Worker Manual and Poll Worker Quick Reference Guide. *See* Ohio Rev. Code § 3501.05(B) (the Secretary shall "[i]ssue instruction by directives and advisories . . . to members of the boards as to the proper methods of conducting elections"). Directive 2008-27 requires boards of elections to provide a copy of these documents to all poll workers and to provide each precinct with three copies of the Poll Worker Quick Reference Guide to use on election day. The Poll Worker Manual addresses provisional voting instructing poll workers to "check to make sure the voter's [provisional ballot affirmation] envelope is completed" and that "[t]he completed [provisional ballot affirmation] envelope should be double-checked by a second poll worker." (*See* Poll Worker Manual 37-40.)

Finally, as authorized by statute, the Secretary issued various rules and instructions to the boards of elections for the conduct of elections. Ohio Rev. Code § 3501.05(C). Following the November 4, 2008 Election, the Secretary instructed the FCBE to count ballots falling in the four disputed ballot categories as long as it could determine from the information provided "that the person [was] registered to vote, voted in the correct precinct and that the person was not required to provide additional information/id within 10 days . . . ." (Nov. 10, 2008 email chain, Ex. D Pf. Mot. TRO.) Also, on November 12, the Secretary informed the FCBE, "[Y]our poll workers are trained to review the provisional ballot affirmation before completing the poll worker portion. Your poll

worker should have noticed that the voter did not put his/her name in column one and instructed the voter to do so . . . That is why I conclude that the omission of a name is poll worker error." (Damschroder Aff., 2.)

### B. Procedural History

This case was originally filed in the Ohio Supreme Court on November 13, 2008. Plaintiffs requested a Writ of Mandamus and Motion for a Temporary Restraining Order ("TRO"). The Secretary and the FCBE were named as Relator-Defendants. On November 14th, the Secretary filed a Notice of Removal to the Federal District Court for the Southern District of Ohio. The case was originally assigned to the Hon. Gregory L. Frost, but was transferred by Judge Frost to this Court because it is a related case to the provisional ballot cases pending before this Court. The day after the transfer the Court held an emergency hearing on the Notice of Removal.

On November 17, 2008, this Court determined the FCBE's interests to be adverse to those of the Secretary and orally granted the Secretary's Motion to Realign Parties, realigning the FCBE as a Plaintiff. That same day, this Court also denied Plaintiffs' and the FCBE's Motions for Remand. Plaintiffs' Complaint raised issues concerning this Court's October 27 Order, adopted in the Secretary's Directive 2008-103, and this Court's October 24 Order, through which this Court adopted the Secretary's Directive 2008-101. Plaintiffs also raised a claim that their Fourteenth Amendment Equal Protection rights were violated due to voter dilution. As a result, this Court found removal to be proper and immediately proceeded with oral arguments on Plaintiffs' Motion for TRO.

Following oral argument, but before issuing a decision on the TRO, the Parties reached an agreement, and Plaintiffs moved to withdraw their Motion. The Parties agreed that there were no issues of material fact and that the sole issue for the Court relates to the proper interpretation of the

laws at issue. This Court granted Plaintiffs' Motion to Withdraw their Motion for a TRO and ordered expedited briefing on the Parties' pending Cross-Motions for Summary Judgment.

### III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). The non-moving party "may not rest upon its mere allegations." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

Although Federal Rule of Civil Procedure 81(b) "abolished" the writ of mandamus, the All Writs Statute, 28 U.S.C. § 1651, empowers federal courts to "issue all writs in aid of their respective jurisdictions, including writs in the nature of mandamus." *Haggard v. Tennessee*, 421 F.2d 1384, 1385 (6th Cir. 1970). A writ of mandamus is an extraordinary remedy, thus "a party seeking such a writ usually must satisfy two conditions: (1) that there are no other adequate means for the party to obtain the desired relief, and (2) that the party has a 'clear and indisputable' right to issuance of

the writ." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648,658 (6th Cir. 1996) (quoting *Allied Chem. Corp. v. Daiflon Inc.*, 449 U.S. 33, 35 (1980) (per curiam)).

A federal court cannot issue a writ of mandamus that compels state officials to comply with state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Nevertheless, a federal court may issue a writ of mandamus ordering a state official to enforce rights protected by federal law. *CBS Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975); *accord Hoffman v. Stump*, No. 97-2177, 1998 WL 869972, at *6 (6th Cir. Dec. 2, 1998); *Benjamin v. Malcolm*, 803 F.2d 46, 53-54 (2d Cir. 1986). However, "[i]t is settled that a federal court has no general jurisdiction to issue writs of mandamus where that is the only relief sought. In the absence of special statutory authority it can issue writs of mandamus only as ancillary to and in aid of jurisdiction otherwise vested in it." *Haggard*, 421 F.2d at 1386.

This Court has already determined that the Complaint includes Fourteenth Amendment Equal Protection Clause claims and claims that the Secretary has failed to comply with this Court's previous orders delineating the proper methods for counting provisional ballots and the possible effects of poll worker error on such counting. (*See* 11/17/2008 Order on Mot. For Remand, Doc. No. 20). Plaintiffs allege that the Secretary misinterpreted the proper methods to count the ballots, and, therefore, relief was needed to "prevent an illegal diminution of their votes." They requested all such relief that the Court "deems appropriate." (Compl. 15). Thus, under 28 U.S.C. § 1331, this Court has power to

issue a writ of mandamus in aid of its jurisdiction over the federal questions in this suit. *Hertz v. Record Pub. Co. Of Erie*, 219 F.2d 397, 399 (3d Cir. 1955) (finding issuance of writ of mandamus proper).[4]

In considering the propriety of issuing a writ in this case, it is necessary to note that Ohio election law appoints the Secretary as the chief election officer of the state, giving her the duty to instruct the various boards of elections "as to the proper methods of conducting elections." Ohio Rev. Code §§ 3505.04, 3505.05. As a result, where the Secretary interprets ambiguity in Ohio election law and that interpretation is reasonably supported by the pertinent provisions of the law, this Court must defer to her reasonable interpretation. *See State ex rel. Colvin v. Brunner*, No. 2008-1813, 2008 WL 4443962, at *13 (Ohio Sept. 29, 2008) (Where "[t]he secretary of state's construction is reasonably supported by the pertinent provisions, and in accordance with well-settled precedent, the court must defer to that reasonable interpretation.") Therefore, unless there is no ambiguity in the statutory provisions relating to the name and signature requirement or the Secretary's interpretation is patently unreasonable, the Court finds that the Secretary's interpretation is entitled to substantial deference and the extraordinary remedy of mandamus must be denied.

## IV. LAW AND ANALYSIS

This case touches on the most fundamental of rights available to American citizens: the right to vote. "Undeniably the Constitution of the United States protects the right of all qualified citizens

---

[4] Moreover, because the Complaint contains allegations that the Secretary, a state officer, has violated a federal court order and the Plaintiffs' constitutional rights, the Court can properly interpret the Complaint as stating a claim under 42 U.S.C. § 1983. *Olson v. Hart*, 965 F.2d 940, 943 (10th Cir. 1992) (construing a plaintiff's request for mandamus relief against a state court judge as an action for injunctive or declaratory relief under Section 1983). The Secretary is therefore subject to suit, and the Court has the authority grant injunctive or declaratory relief.

to vote, in state as well as federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964). But the Constitution protects "more than the initial allocation of the franchise," *Bush v. Gore*, 531 U.S. 98, 104 (2000); rather, it is well-settled that the Constitution protects the right of all qualified voters to have their votes counted. *Reynolds*, 377 U.S. at 554 (citing *United States v. Mosley*, 238 U.S. 383 (1915)). As aptly stated by the Supreme Court, "[h]aving once granted the right to vote on equal terms, the State [or a local Board of Elections] may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 377 U.S. at 105 (citing *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 665 (1966)).

The Ohio Supreme Court recently reaffirmed the principle that courts "must avoid unduly technical interpretations [of election laws] that impede the public policy favoring free, competitive elections." *State ex rel. Myles v. Brunner*, No. 2008-Ohio-5097, slip. op. at ¶ 22 (Ohio Oct. 2, 2008) (quoting *State ex rel. Ruehlmann v. Luken* , 598 N.E.2d 1149, 115 (Ohio 1992)). Therefore, though at first blush, the Parties' dispute appears to involve mere disagreements over state law interpretation, given the weight of the issues underlying these disagreements and the foregoing constitutional framework, this Court is keenly aware of its obligation to protect voter enfranchisement.

**A. The Plain Language of Ohio Election Law Confirms the Secretary's Interpretation**

Plaintiffs argue that this Court may not impose an implied duty on poll workers to verify PBAs. The Secretary counters that Ohio Revised Code imposes an affirmative duty on poll workers to ensure that voters' affirmations are fully and correctly completed. Were the law silent on these issues or the relevant terms ambiguous, this Court would give deference to the reasonable interpretation of the Secretary as this state's chief elections officer. *See supra* § 3505.04. However,

because the plain and unambiguous statutory terms resolve the Parties' dispute, no such deference is required.

As set forth below, this Court finds that both state and federal law impose a duty on poll workers to verify that a provisional voter has fully and properly completed a PBA—which includes both a printed name and a signature—before accepting a voter's provisional ballot. Thus, because the disputed ballots in the FCBE's custody are deficient due to poll worker error, they constitute valid votes that must be opened and counted.

*1. Ohio law requires that the disputed ballots are counted*

Several sections of Ohio election law are at issue in this case: § 3505.181, Provisional Ballots; § 3505.182, Provisional Ballot Affirmation; and § 3505.183, Determination of Validity of Provisional Ballots, Counting of Ballots, Rejection of Ballots. Ohio Rev. Code §§ 3505.181(B)(1)-(B)(6) provides the general framework for provisional voting:

> (B) An individual who is eligible to cast a provisional ballot under division (A) of this section shall be permitted to cast a provisional ballot as follows:
>
> (1) An election official at the polling place shall notify the individual that the individual may cast a provisional ballot in that election.
>
> (2) The individual shall be permitted to cast a provisional ballot at that polling place ***upon the execution of a written affirmation by the individual before an election official*** at the polling place stating that the individual is both of the following:
>
> (a) A registered voter in the jurisdiction in which the individual desires to vote;
>
> (b) Eligible to vote in that election.
>
> (3) An election official at the polling place shall transmit the ballot cast by the individual, the voter information contained in the written affirmation executed by the individual under division (B)(2) of this section, or the individual's name if the individual declines to execute such an affirmation to an appropriate local election official for verification under division (B)(4) of this section.

(4) If the appropriate local election official to whom the ballot or voter or address information is transmitted under division (B)(3) of this section determines that the individual is eligible to vote, the individual's provisional ballot shall be counted as a vote in that election.

(5)(a) At the time that an individual casts a provisional ballot, the appropriate local election official shall give the individual written information that states that any individual who casts a provisional ballot will be able to ascertain under the system established under division (B)(5)(b) of this section whether the vote was counted, and, if the vote was not counted, the reason that the vote was not counted.

(b) The appropriate state or local election official shall establish a free access system, in the form of a toll-free telephone number, that any individual who casts a provisional ballot may access to discover whether the vote of that individual was counted, and, if the vote was not counted, the reason that the vote was not counted. The free access system established under this division also shall provide to an individual whose provisional ballot was not counted information explaining how that individual may contact the board of elections to register to vote or to resolve problems with the individual's voter registration.

The appropriate state or local election official shall establish and maintain reasonable procedures necessary to protect the security, confidentiality, and integrity of personal information collected, stored, or otherwise used by the free access system established under this division. Access to information about an individual ballot shall be restricted to the individual who cast the ballot.

(emphasis added).

Section 3505.181(B)(2) specifically requires that "[t]he individual [attempting to cast a provisional ballot] shall be permitted to cast a provisional ballot at that polling place upon the execution of a written affirmation by the individual before an election official at the polling place stating that the individual is both of the following: [registered and eligible to vote in that election]." Read plainly, the Section demands that a poll worker witness to the execution of a voter's PBA. But the provision requires more than the mere passive presence of the poll worker, conferring on him a duty to verify the actual completion of the PBA form, thereby requiring him to participate actively in the exercise of an eligible voter's franchise. *See* Ohio Rev. Code § 3505.181(B)(2).

Section 3505.182, which provides a substantive format for the PBA, bolsters this Court's understanding of a poll worker's duties. One of the fundamental components of this PBA form is the "Verification Statement," which can only be completed by the poll worker. *Id*. The Verification Statement provides a poll worker with a written checklist for ensuring that a voter is eligible and that his affirmation is proper. *See* Ohio Rev. Code § 3505.182. The Verification Statement affirmatively requires a poll worker to sign and date the following language: "[t]he Provisional Ballot Affirmation . . . was subscribed and affirmed before me . . . ." "Subscription" is "the act of signing one's name on a document." Black's Law Dictionary 674 (2d Pocket Ed. 1996). "Affirm" means "to solemnly declare rather than swear under oath." *Id*. at 23. Thus, the verification statement requires the poll worker to confirm that the voter completed the affirmation by providing both a name and signature.

Moreover, in an effort to assist county boards of election in the execution of their duties, the Secretary promulgated a PBA-envelope to be used by voters casting a provisional ballot—Form 12-B. Form 12-B sets out lines for a voter's printed name and signature. Directly below the voter-signature line, Form 12-B provides the statutorily required line for the "Signature of Witnessing Election Official." As noted *supra*, Section II.A.4., for reasons unknown to this Court, the FCBE rejected Form 12-B and used its own PBA form, which expressly quotes the language of the Verification Statement in Section 3505.182, requiring a poll worker to confirm that the PBA was properly and fully "subscribed and affirmed before me." Ohio Rev. Code § 3505.182

Thus, the Ohio General Assembly, the Secretary, and, at some point, the FCBE all envisioned that poll workers would be responsible for verifying not only that a voter signed his PBA form, but also that the voter properly affirmed the ballot as contemplated by Ohio law. To be sure, where any county board of elections accepts a Provisional Ballot without a complete voter affirmation, including

a poll worker verification statement, that situation is attributable to the poll worker's failure to perform his statutorily prescribed role and constitutes poll worker error. As noted, there are three disputed categories of provisional ballots at issue in this case: (1) ballots where a voter has signed the affirmation but failed to print her name; (2) ballots where the voter provided a printed name on the affirmation but failed to include a signature; (3) ballots that include both a voter signature and the voter's printed name, where the signature, the printed name, or both were written on the wrong portion of the Application. As described above, Section § 3505.181(B)(2) imposes an affirmative duty on poll workers to not accept a ballot if the affirmation is not executed in front of the poll worker, and section 3505.183(B)(1)(a) requires that an affirmation contain a name and signature. A ballot could not be accepted without a name and signature in the affirmation unless there was poll worker error. In addition, Section 3505.182 provides that the poll worker should sign a "Verification Statement" that the affirmation was subscribed and affirmed before the poll worker. Thus, for all three categories, the Secretary's interpretation prevails because the "deficiencies" in these ballots are the result of poll worker error, which pursuant to this Court's Order cannot invalidate a ballot.

In addition, for the second category in which there is a ballot with a printed name, but no signature, another provision of the Ohio election law, Section 3505.183(B)(1), allows such a ballot to be counted. That Section contemplates a situation where a voter declines to affirm his ballot. It states, "If the individual declines to execute [an] affirmation, the individual's name, written by either the individual or the election official at the direction of the individual, shall be included in a written affirmation in order for the provisional ballot to be eligible to be counted." Ohio Rev. Code § 3505.183(B)(1); *see also* Ohio Rev. Code § 3505.181(B)(6) ("If the individual declines to execute such an affirmation, the appropriate local election official shall record the individual's name and

include that information with the transmission of the ballot . . . .") Tellingly, this exception, allowing for the counting of a provisional ballot with no signature, demonstrates that the name and signature requirement of Section 3505.183(B)(1)(a) is not an absolute. Thus, where a voter refuses to sign the PBA, Ohio law requires that his vote be counted. Such a ballot is indistinguishable from a provisional ballot where the individual *forgot* to sign the affirmation. Either way, the existence of ballot applications which contain only the voter's printed name constitutes poll worker error. And there is no way to know whether the individual overlooked signing the affirmation or simply declined to execute it.

The Parties do not dispute that poll worker error cannot lead to the rejection of an otherwise valid ballot. Moreover, as noted above, Plaintiffs do not contend that any of the disputed ballots were fraudulent, cast by ineligible voters, or cast in the wrong precinct. Thus, because but for the failure of poll workers to perform their statutory duty these otherwise eligible votes would be counted, the Constitution and federal law require the disputed ballots to be opened and counted. *See Bush*, 531 U.S. at 105-106 (holding that to comply with the Equal Protection Clause, a state must employ adequate and uniform standards when conducting a recount of ballots).

*2. Federal law requires that the disputed ballots are counted*

Federal law provides additional support for this Court's finding that the disputed ballots should be counted. Directive 2008-101, adopted by an order of this Court, allows for a provisional ballot to be counted where all of the following apply:

a) The individual named on the affirmation is properly registered to vote;

b) The individual named on the affirmation is eligible to cast a ballot in the precinct and for the election in which the individual cast the provisional ballot;

c) The individual provided the following:

-15-

> > (1) His or her name and signature as the person who cast the provisional ballot;
>
> > (2) A statement that he or she, as the person who cast the provisional ballot, is a registered voter in the jurisdiction in which he or she cast the provisional ballot; and
>
> > (3) A statement that he or she, as the person who cast the provisional ballot, is eligible to vote in the particular election in which he or she cast the provisional ballot;
>
> or
>
> > (4) *His or her name recorded in a written affirmation statement entered either by the individual or at the individual's direction recorded by an election official*;
>
> or
>
> > (5) A completed affirmation under R.C. 3S0S.18(B)(4) (80S Form 10-T).

Directive 2008-101 (emphasis added). Directive 2008-101 does not specifically require either a voter's printed name or his signature, reflecting the effort by both the Secretary and this Court to allow a voter to attest to his or her eligibility to vote before casting a provisional ballot. In short, the plain language of Directive 2008-101 allows a provisional ballot to be counted so long as the voter's name—in printed *or* signed format— is recorded in the written affirmation statement. Any other reading would fundamentally misunderstand both the purpose of the PBA and the public policy favoring voter enfranchisement.

### B. The Secretary's Approach Still Permits the Detection of Voter Fraud

Plaintiffs and the FCBE argue that the rejection of PBAs lacking a voter's signature is "vital to the prosecution of voter fraud, prevents voter dilution, and protects the integrity of the election." (FCBE S.J. Mot. 6.) However, their arguments are belied by the plain language of Ohio Rev. Code § 3599.12(A)(1), which defines voter fraud as follows:

> (A) No person shall do any of the following:
>
> > (1) Vote or attempt to vote in any primary, special, or general election in a precinct in which that person is not a legally qualified elector;

(2) Vote or attempt to vote more than once at the same election by any means, including voting or attempting to vote both by absent voter's ballots under division (G) of section 3503.16 of the Revised Code and by regular ballot at the polls at the same election, or voting or attempting to vote both by absent voter's ballots under division (G) of section 3503.16 of the Revised Code and by absent voter's ballots under Chapter 3509. or armed service absent voter's ballots under Chapter 3511. of the Revised Code at the same election;

(3) Impersonate or sign the name of another person, real or fictitious, living or dead, and vote or attempt to vote as that other person in any such election;

(4) Cast a ballot at any such election after objection has been made and sustained to that person's vote;

(5) Knowingly vote or attempt to vote a ballot other than the official ballot.

(B) Whoever violates division (A) of this section is guilty of a felony of the fourth degree. None of the above provisions depend on the presence of a printed name and signature, or any combination of the two. If a voter commits voter fraud, that person will still be prosecuted, regardless of whether the individual signs the affirmation form.

Furthermore, voter fraud can still be detected in all of the three disputed ballot categories, as follows:

(1) **Signature, no printed name**: in this scenario, voter fraud could be detected because the board of elections can compare the signature on the ballot to the digitized signature in its voter registration database. If the signature on the ballot does not match, the ballot would not be counted and the board of elections can investigate the situation for potential fraud.

(2) **Printed name, but no signature**: in this scenario, voter fraud could be detected because the board of elections can look up a voter's name listed on the ballot in its database to confirm that the voter is registered to vote at the given precinct and voted

only once in the election. If after looking up the name, the voter is found to be ineligible, his ballot would not be counted and the board of elections can investigate the situation for potential fraud. In addition, even if we adopted the Plaintiffs proposed interpretation, there would be situations in which there were unsigned ballots where the voter refused to sign the affirmation § 3505.181(B)(6).

(3) **Printed name and/or signature in wrong location**: in this scenario, all of a voter's relevant information is present for a potential fraud investigation by the board of elections. Further, none of the voter fraud provisions depend on the presence of a signature, let alone the presence of a signature in an affirmation.

Finally, Plaintiffs contend that the Secretary's interpretation would deprive them of their Fourteenth Amendment Equal Protection Rights against vote dilution. However, counting the provisional ballots of demonstrably eligible voters will not dilute Plaintiffs' voting rights. *Cf. Crawford v. Marion County Election Bd.*, 128 S. Ct. 1610, 1619 (2008) (Recognizing the importance of a State's interest in counting only the votes of *eligible* voters in the face of voter fraud); *United States v. Classic*, 313 U.S. 299, 315 (1941) (recognizing the right of qualified voters to cast ballots and have them counted). Plaintiffs do not dispute that all of the disputed ballots were cast in the correct precincts by registered voters. Rather, Plaintiffs seek the rejection of these ballots based on an interpretation of Ohio election law that demands strict compliance with the hyper-technicalities of the statute. However, Ohio public policy squarely opposes Plaintiffs' position. *State ex rel. Myles*, No. 2008-Ohio-5097, at ¶. The Plaintiffs' reading of Ohio law would lead to unequal and inadvisable results, in direct violation of the principle that election laws should be construed to promote voter

participation, not to discourage it. *See State ex rel. Colvin v. Brunner*, 2008 WL 4443962, at *13; *Purcell v. Gonzalez*, 549 U.S.1, 7 (2006) *Purcell v. Gonzalez*, 549 U.S.1, 7 (2006) (The public has a strong interest in exercising the "fundamental political right" to vote, and "the possibility that qualified voters might . . . [not have their votes counted] would caution any district judge to give careful consideration to the plaintiffs' challenges." )

## V. CONCLUSION

The Court finds that the Secretary's interpretation: (1) is consistent with Ohio election law and the federal law governing this case (Directive 2008-101 and the October 27 Order); and (2) does not impair the board of elections' ability to detect and prosecute voter fraud. Therefore, although this case involves the type of extraordinary situation which could justify a writ of mandamus, because the Secretary is in compliance with federal law, Plaintiffs are not entitled to the relief they seek.

For the foregoing reasons, this Court **GRANTS** the Secretary's Motion for Summary Judgment (Doc. No. 31), and **DENIES** the Plaintiffs' and the FCBE's Motions for Summary Judgment (Doc No.'s 37 and 34).

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATE: November 20, 2008**